UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X
                                   :

   UNITED STATES OF AMERICA       :

                                :

        - v. -         :   SEALED INDICTMENT

                                :

   NAREK MARUTYAN,             :   20 Cr. ___ (  )
   ALBERT MARUTYAN,           :
     a/k/a "Abo,"             :
   MIKAYEL YEGHOYAN,          :
     a/k/a "Misho,"          :
   DAVIT YEGHOYAN,           :
   VAHE HOVHANNISYAN,        :
   LUSINE GHAZARYAN,        :
   SARO MOURADIAN,         :
     a/k/a "Paul Mouradian," and
   ZAVEN YERKARYAN,         :

          Defendants.   :

- - - - - - - - - - - - - - - - - X

**20 CRIM 652**

## COUNT ONE

### (Racketeering Conspiracy)

The Grand Jury charges:

#### Background

1.   At all times relevant to this Indictment, NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, and VAHE HOVHANNISYAN, the defendants, and others known and unknown, were members and associates of an organized criminal group, referred to by its members and associates as "Pure Armenian Blood" ("P.A.B." or the "Enterprise"). P.A.B. is an organized criminal group operating under the direction and protection

of an unindicted coconspirator ("CC-1"), a *vor v zakone*" or "*vor*," which are Russian phrases translated roughly as "Thief-in-Law" or "Thief," and which refer to an order of elite criminals from the former Soviet Union who receive tribute from other criminals, offer protection, and use their recognized status as "*vor*" to adjudicate disputes among lower-level criminals. Members and associates of P.A.B. operated under the direction and protection of CC-1, a *vor* of Armenian descent who was based in Los Angeles, California before being deported in or about 2018. The members and associates of P.A.B. engaged in widespread criminal activities, including identity theft and credit card fraud.

2. Pure Armenian Blood, including its leadership, membership, and associates, constituted an "enterprise" as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. Members and associates used business entities operating under the control and in conjunction with members of the Enterprise at various points throughout the conspiracy including a luxury autobody shop, a business located in New Jersey (the "Body Shop"); Ghost Auto & Towing Inc., a business located in Suffolk County, New York and operated by NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," and DAVIT YEGHOYAN; Ghost Towing 2 Inc., a business located in Brooklyn, New York and operated by NAREK MARUTYAN, ALBERT MARUTYAN, MIKAYEL YEGHOYAN, and DAVIT YEGHOYAN; Posh Cars Spa LLC, a business located

2

in Brooklyn, New York, operated by NAREK MARUTYAN and ALBERT MARUTYAN until in or about October 2017.

3.     P.A.B. was an organized criminal group based in New York City that operated in the Southern District of New York, New Jersey, California, Florida, and elsewhere, and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce.

4.     P.A.B. operated through groups of individuals, often with overlapping members or associates, dedicated to particular criminal tasks, particularly identity theft, access device fraud and credit card fraud, among others. While P.A.B. was based in New York City, the Enterprise had operations in various locations throughout the United States (including in New Jersey, California, and Florida) and abroad. Most members and associates of P.A.B. were born in the former Soviet Union and many maintained substantial ties to Armenia, including communication with associates in Armenia and the transfer of criminal proceeds to individuals in Armenia.

5.     Members and associates of the P.A.B. acknowledge their group affiliation in a variety of ways. This includes tattoos of "vor stars"; an image of a bearded man wearing a crown with "P.A.B." written where eyes would otherwise be (the "P.A.B. Logo") which members and associates of the Enterprise place on, among other

3

things, clothing, hats and, in at least one instance, a birthday cake; and incorporating "*vor* stars," "P.A.B." and the P.A.B. Logo on such items as a telephone case or as part of a personalized license plate number.

### Purposes of the Enterprise

6.    The purposes of Pure Armenian Blood included the following:

a.    Enriching the members and associates of P.A.B. through, among other things, (i) the use of counterfeit credit cards and stolen personal identifying information; (ii) selling goods purchased with counterfeit credit cards for profit; (iii) fraudulently opening and exhausting lines of credit, and then falsifying documents to "clean" the credit of account holders in whose names the lines of credit were opened (the "Account Holders"), who were often relatives or acquaintances of members and associates of P.A.B.; (iv) selling access device fraud devices to other criminals to install in order to steal personal identifying information; and (v) making purchases at collusive businesses with counterfeit credit cards or credit cards that were fraudulently opened; and

b.    Promoting and enhancing P.A.B. and the activities of its members and associates.

### Means and Methods of the Enterprise

4

7.   Among the means and methods employed by the members and associates in conducting and participating in the conduct of the affairs of P.A.B. were the following:

a.   Members and associates of the Enterprise generated income for the Enterprise through, among other things (i) the use of counterfeit credit cards and stolen personal identifying information; (ii) selling goods purchased with counterfeit credit cards for profit; (iii) fraudulently opening and exhausting lines of credit, and then falsifying documents to "clean" the credit of the Account Holders; (iv) selling access device fraud devices to other criminals to install in order to steal personal identifying information; and (v) making purchases at collusive businesses with counterfeit credit cards or credit cards that were fraudulently opened.

b.   Members and associates of the Enterprise at times engaged in criminal conduct and coordinated their criminal activities with leaders, members, and associates of other criminal organizations.

c.   Members and associates of P.A.B. used various techniques to avoid law enforcement scrutiny of P.A.B.'s criminal activities. Members and associates of P.A.B. typically used coded language when referring to making arrangements for meetings and to other members and associates of the Enterprise, and took other steps to frustrate law enforcement's efforts to overhear their discussions. Members and associates also engaged in other evasive conduct, such

as the use of particular cellular telephones for the discussion of particular criminal activities and the use of encrypted communications and applications and devices when discussing criminal activities in an effort to thwart potential law enforcement eavesdropping. Members and associates of P.A.B. also attempted to thwart potential law enforcement eavesdropping by engaging in "in-person" meetings to discuss criminal activities and by stating that certain conversations should be conducted in person, or over live stream or encrypted applications, and not by telephone.

## Statutory Allegations

### The Racketeering Conspiracy

8.    From at least in or about 2011, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, and VAHE HOVHANNISYAN, the defendants, and others known and unknown, being persons employed by and associated with the enterprise described above, namely, Pure Armenian Blood, which was engaged in, and the activities of which affected, interstate and foreign commerce, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of Pure Armenian Blood

through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple:

a.    Acts indictable under Title 18, United States Code, Section 1343 (relating to wire fraud);

b.    Acts indictable under Title 18, United States Code, Section 1028 (relating to fraud and related activity in connection with identification documents); and

c.    Acts indictable under Title 18, United States Code, Section 1029 (relating to fraud and related activity in connection with access devices).

9.    It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the Enterprise.

### Overt Acts

10.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    In or about 2014, DAVIT YEGHOYAN, the defendant, provided a coconspirator not charged herein ("CC-2") with approximately 20 credit cards that had been coded with fraudulently obtained identifying information;

b.    On or about February 19, 2015, MIKAYEL YEGHOYAN, a/k/a "Misho," the defendant, attempted to purchase jewelry with

a fraudulent credit card at a store in New Jersey.

      c.    On or about March 11, 2015, ALBERT MARUTYAN, a/k/a "Abo," the defendant, sent a text message containing photographs of (1) a California Driver's License depicting an Account Holder ("Account Holder-1") and including the name, date of birth and address of Account Holder-1 and (2) a credit card in the name of Account Holder-1, which card was used to make large purchases and the balance of which was not paid off.

      d.    On or about September 18, 2015, NAREK MARUTYAN, ALBERT MARUTYAN, and MIKAYEL YEGHOYAN, the defendants, used a fraudulent credit card to book a hotel reservation in Los Angeles, California.

      e.    On or about December 7, 2015, MIKAYEL YEGHOYAN, the defendant, provided a coconspirator not charged herein ("CC-3") with login information associated with a bank account in the name of an Account Holder ("Account Holder-2") whose identity was used to open multiple lines of credit, the balance of which were not paid off.

      f.    On or about July 22, 2016, a coconspirator not charged herein ("CC-4") attempted to send NAREK MARUTYAN, the defendant, from Illinois to an address in Brooklyn, New York, a Federal Express package containing a laptop with software used to re-encode credit cards, a credit card reader and encoder.

      g.    Between on or about December 2, 2016 and on or about

November 7, 2017, VAHE HOVHANNISYAN, the defendant, placed orders for transistor components from electronics companies.

h.   Between in or about February 2017 and in or about 2018, NAREK MARUTYAN, the defendant, sold skimmer devices, that is, electronic devices that can be attached to credit card readers that, when a credit card is swiped, capture credit card information and then transmit that information for collection.

i.   On or about July 15, 2019, MIKAYEL YEGHOYAN, the defendant, used a credit card in the name of an Account Holder ("Account Holder-3") to make a purchase of more than $1,000 at a jewelry retailer in Manhattan, New York, the balance of which card was not paid off.

j.   On or about July 28, 2019, MIKAYEL YEGHOYAN, the defendant, used a credit card in the name Account Holder-3 to make a purchase of more than $1,000 at a watch retailer in Manhattan, New York, the balance of which card was not paid off.

k.   On or about February 5, 2020, MIKAYEL YEGHOYAN, the defendant, sent an email to Zaven Yerkaryan, a defendant charged in Count Four of this Indictment, instructing Yerkaryan to remove a line of credit from an Account Holder's ("Account Holder-4's") credit report.

l.   On or about February 9, 2020, DAVIT YEGHOYAN, the defendant, used a credit card in the name of an Account Holder ("Account Holder-5") to make a payment of more than $1,000 at a

business operated by Lusine Ghazaryan, a defendant charged in Counts Two, Three, and Four of this Indictment, without receiving any goods or services, the balance of which card was not paid off.

      m.  On or about March 30, 2020, MIKAYEL YEGHOYAN, the defendant, sent an email to Saro Mouradian, a/k/a "Paul Mouradian," a defendant charged in Counts Two, Three, and Four of this Indictment, attaching correspondence from a bank relating to an account in the name of an Account Holder ("Account Holder-6"), a credit card in whose name was subsequently used to make a payment at a business operated by Mouradian.

      (Title 18, United States Code, Section 1962(d).)

## COUNT TWO
### (Conspiracy to Commit Fraud Relating to Means of Identification)

    The Grand Jury further charges:

      11.  The allegations set forth in paragraphs 1 through 7 and 10, are repeated and realleged, and incorporated by reference as if fully set forth herein.

      12.  From at least in or about 2011, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, VAHE HOVHANNISYAN, LUSINE GHAZARYAN, and SARO MOURADIAN, a/k/a "Paul Mouradian," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and

agree together and with each other to commit identification fraud, to wit, to violate Title 18, United States Code, Section 1028(a)(7).

13.   It was a part and an object of the conspiracy that NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, VAHE HOVHANNISYAN, LUSINE GHAZARYAN, and SARO MOURADIAN, a/k/a "Paul Mouradian," the defendants, and others known and unknown, knowingly would and did transfer, possess, and use, without lawful authority, a means of identification of another person with the intent to commit, and to aid and abet, and in connection with, any unlawful activity that constitutes a violation of Federal law, and that constitutes a felony under any applicable State and local law, in violation of Title 18, United States Code, Section 1028(a)(7).

### Overt Acts

14.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In or about 2014, DAVIT YEGHOYAN, the defendant, provided CC-2 with approximately 20 credit cards that had been coded with fraudulently obtained identifying information;

b.   On or about February 19, 2015, MIKAYEL YEGHOYAN, the defendant, attempted to purchase jewelry with a fraudulent credit card at a store in New Jersey.

c.   On or about March 11, 2015, ALBERT MARUTYAN, the

11

defendant, sent a text message containing photographs of (1) a California Driver's License depicting Account Holder-1 and including the name, date of birth and address of Account Holder-1 and (2) a credit card in the name of Account Holder-1, which card was used to make large purchases and the balance of which was not paid off.

d.   On or about September 18, 2015, NAREK MARUTYAN, ALBERT MARUTYAN and MIKAYEL YEGHOYAN, the defendants, used a fraudulent credit card to book a hotel reservation in Los Angeles, California.

e.   On or about December 7, 2015, MIKAYEL YEGHOYAN, the defendant, provided CC-3 with login information associated with a bank account in the name of Account Holder-2 whose identity was used to open multiple lines of credit, the balance of which were not paid off.

f.   On or about July 22, 2016, CC-4 attempted to send NAREK MARUTYAN, the defendant, from Illinois to an address in Brooklyn, New York, a Federal Express package containing a laptop with software used to re-encode credit cards, a credit card reader and encoder.

g.   Between on or about December 2, 2016 and on or about November 7, 2017, VAHE HOVHANNISYAN, the defendant, placed orders for transistor components from electronics companies.

h.   Between in or about February 2017 and in or about

2018, NAREK MARUTYAN, the defendant, sold skimmer devices, that is, electronic devices that can be attached to credit card readers that, when a credit card is swiped, capture credit card information and then transmit that information for collection.

   i.   On or about July 15, 2019, MIKAYEL YEGHOYAN, the defendant, used a credit card in the name of Account Holder-3 to make a purchase of more than $1,000 at a jewelry retailer in Manhattan, New York, the balance of which card was not paid off.

   j.   On or about July 28, 2019, MIKAYEL YEGHOYAN, the defendant, used a credit card in the name Account Holder-3 to make a purchase of more than $1,000 at a watch retailer in Manhattan, New York, the balance of which card was not paid off.

   k.   On or about February 5, 2020, MIKAYEL YEGHOYAN, the defendant, sent an email to Zaven Yerkaryan, a defendant charged in Count Four of this Indictment, instructing Yerkaryan to remove a line of credit from Account Holder-4's credit report.

   l.   On or about February 9, 2020, DAVIT YEGHOYAN, the defendant, used a credit card in the name of Account Holder-5 to make a payment of more than $1,000 at a business operated by LUSINE GHAZARYAN, the defendant, without receiving any goods or services, the balance of which card was not paid off.

   m.   On or about March 30, 2020, MIKAYEL YEGHOYAN, the defendant, sent an email to SARO MOURADIAN, a/k/a "Paul Mouradian," the defendant, attaching correspondence from a bank relating to an

account in the name of Account Holder-6, a credit card in whose name was subsequently used to make a payment at a business operated by MOURADIAN.

(Title 18, United States Code, Section 1028(f).)

## COUNT THREE

### (Conspiracy to Commit Access Device Fraud)

The Grand Jury further charges:

15.   The allegations set forth in paragraphs 1 through 7 and 10, are repeated and realleged, and incorporated by reference as if fully set forth herein.

16.   From at least in or about 2011, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, VAHE HOVHANNISYAN, LUSINE GHAZARYAN, and SARO MOURADIAN, a/k/a "Paul Mouradian," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit access device fraud, to wit, to violate Title 18, United States Code, Sections 1029(a)(1), 1029(a)(2), and 1029(a)(5).

17.   It was a part and an object of the conspiracy that NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, VAHE HOVHANNISYAN, LUSINE GHAZARYAN, and SARO MOURADIAN, a/k/a "Paul Mouradian," the

defendants, and others known and unknown, knowingly and with intent to defraud, would and did produce, use, and traffic in access devices or identifiable components of access devices that were counterfeit, fictitious, altered, or forged, said production, trafficking, and use affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1029(a)(1).

18.   It was further a part and an object of the conspiracy that NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, VAHE HOVHANNISYAN, LUSINE GHAZARYAN, and SARO MOURADIAN, a/k/a "Paul Mouradian," the defendants, and others known and unknown, knowingly and with intent to defraud, would and did use and traffic in access devices that were lost, stolen, expired, revoked, canceled, and obtained with intent to defraud, and by such conduct, obtained $1,000 or more in a one-year period, said use and trafficking affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1029(a)(2).

19.   It was further a part and an object of the conspiracy that NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, VAHE HOVHANNISYAN, LUSINE GHAZARYAN, and SARO MOURADIAN, a/k/a "Paul Mouradian," the defendants, and others known and unknown, knowingly and with intent to defraud, would and did effect transactions with access devices issued to other persons, to receive payment and things of value

during a one-year period, of an aggregated value of $1,000 or more, said conduct affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1029(a)(5).

### Overt Acts

20.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    In or about 2014, DAVIT YEGHOYAN, the defendant, provided CC-2 with approximately 20 credit cards that had been coded with fraudulently obtained identifying information;

b.    On or about February 19, 2015, MIKAYEL YEGHOYAN, the defendant, attempted to purchase jewelry with a fraudulent credit card at a store in New Jersey.

c.    On or about March 11, 2015, ALBERT MARUTYAN, the defendant, sent a text message containing photographs of (1) a California Driver's License depicting Account Holder-1 and including the name, date of birth and address of Account Holder-1 and (2) a credit card in the name of Account Holder-1, which card was used to make large purchases and the balance of which was not paid off.

d.    On or about September 18, 2015, NAREK MARUTYAN, ALBERT MARUTYAN and MIKAYEL YEGHOYAN, the defendants, used a fraudulent credit card to book a hotel reservation in Los Angeles, California.

e.   On or about December 7, 2015, MIKAYEL YEGHOYAN, the defendant, provided CC-3 with login information associated with a bank account in the name of Account Holder-2 whose identity was used to open multiple lines of credit, the balance of which were not paid off.

f.   On or about July 22, 2016, CC-4 attempted to send NAREK MARUTYAN, the defendant, from Illinois to an address in Brooklyn, New York, a Federal Express package containing a laptop with software used to re-encode credit cards, a credit card reader and encoder.

g.   Between on or about December 2, 2016 and on or about November 7, 2017, VAHE HOVHANNISYAN, the defendant, placed orders for transistor components from electronics companies.

h.   Between in or about February 2017 and in or about 2018, NAREK MARUTYAN, the defendant, sold skimmer devices, that is, electronic devices that can be attached to credit card readers that, when a credit card is swiped, capture credit card information and then transmit that information for collection.

i.   On or about July 15, 2019, MIKAYEL YEGHOYAN, the defendant, used a credit card in the name of Account Holder-3 to make a purchase of more than $1,000 at a jewelry retailer in Manhattan, New York, the balance of which card was not paid off.

j.   On or about July 28, 2019, MIKAYEL YEGHOYAN, the defendant, used a credit card in the name Account Holder-3 to make

a purchase of more than $1,000 at a watch retailer in Manhattan, New York, the balance of which card was not paid off.

k.   On or about February 5, 2020, MIKAYEL YEGHOYAN, the defendant, sent an email to ZAVEN YERKARYAN, a defendant charged in Count Four of this Indictment, instructing YERKARYAN to remove a line of credit from Account Holder-4's credit report.

l.   On or about February 9, 2020, DAVIT YEGHOYAN, the defendant, used a credit card in the name of Account Holder-5 to make a payment of more than $1,000 at a business operated by LUSINE GHAZARYAN, the defendant, without receiving any goods or services, the balance of which card was not paid off.

m.   On or about March 30, 2020, MIKAYEL YEGHOYAN, the defendant, sent an email to SARO MOURADIAN, a/k/a "Paul Mouradian," the defendant, attaching correspondence from a bank relating to an account in the name of Account Holder-6, a credit card in whose name was subsequently used to make a payment at a business operated by MOURADIAN.

(Title 18, United States Code, Section 1029(b)(2).)

## COUNT FOUR
### (Conspiracy to Commit Mail Fraud and Wire Fraud)

The Grand Jury further charges:

21.   The allegations set forth in paragraphs 1 through 7 and 10, are repeated and realleged, and incorporated by reference as if fully set forth herein.

22.   From at least in or about 2011, up to and including the date of the filing  this Indictment, in the Southern District of New York and elsewhere, NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, VAHE HOVHANNISYAN, LUSINE GHAZARYAN, SARO MOURADIAN, a/k/a "Paul Mouradian," and ZAVEN YERKARYAN, the defendants, and others known and unknown, knowingly and willfully did combine, conspire, confederate and agree together and with each other to commit wire fraud and mail fraud, to wit, in violation of Title 18, United States Code, Sections 1343 and  1341.

23.   It was a part and an object of the conspiracy that NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, VAHE HOVHANNISYAN, LUSINE GHAZARYAN, SARO MOURADIAN, a/k/a "Paul Mouradian," and ZAVEN YERKARYAN, the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, would and did transmit and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

24. It was further a part and an object of the conspiracy that NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, VAHE HOVHANNISYAN, and ZAVEN YERKARYAN, the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, would and did place in any post office or authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, in violation of Title 18, United States Code, Section 1341.

(Title 18, United States Code, Section 1349.)

## COUNT FIVE
### (Aggravated Identity Theft)

The Grand Jury further charges:

25. From at least on or about July 15, 2019, up to and including at least July 28, 2019, in the Southern District of New York and elsewhere, MIKAYEL YEGHOYAN, a/k/a "Misho," the defendant, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States code, Section 1028A(c), to wit, the offenses alleged in Counts Three and Four of this Indictment, knowing that the means of identification belonged to another actual person

("Account Holder-3"), including in connection with the transactions alleged in paragraphs 20(j) and 20(k).

(Title 18, United States Code, Sections 1028A(a)(1) and 2.)

## COUNT SIX
### (Aggravated Identity Theft)

The Grand Jury further charges:

26.   On or about February 9, 2020, in the Southern District of New York and elsewhere, DAVIT YEGHOYAN, the defendant, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, the offenses alleged in Counts Three and Four of this Indictment, knowing that the means of identification belonged to another actual person ("Account Holder-5"), including in connection with the transaction alleged in paragraph 20(n).

(Title 18, United States Code, Sections 1028A(a)(1) and 2.)

## FORFEITURE ALLEGATIONS AND SUBSTITUTE ASSET PROVISIONS

### FORFEITURE ALLEGATION AS TO COUNT ONE

27.   As a result of committing the offense alleged in Count One of this Indictment, NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, and VAHE HOVHANNISYAN, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963,

a.   any interest acquired or maintained in violation of Section 1962;

b.   any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise established, operated, controlled, conducted, or participated in the conduct of in violation of Section 1962; and

c.   any property constituting, or derived from, any proceeds obtained, directly or indirectly, from the racketeering activity charged in Count One.

### FORFEITURE ALLEGATION AS TO COUNT TWO

28.   As a result of committing the offense charged in Count Two of this Indictment, NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, VAHE HOVHANNISYAN, LUSINE GHAZARYAN, and SARO MOURADIAN, a/k/a "Paul Mouradian," the defendants, shall forfeit to the United States

pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 1028(b), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of said offense and any and all personal property used or intended to be used to commit said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

FORFEITURE ALLEGATION AS TO COUNT THREE

29. As a result of committing the offense charged in Count Three of this Indictment, NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, VAHE HOVHANNISYAN, LUSINE GHAZARYAN, and SARO MOURADIAN, a/k/a "Paul Mouradian," the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 1029(c)(1)(C),, any and all property, constituting, or derived from, proceeds obtained directly or indirectly, as a result of the commission of said offense, and any and all personal property used or intended to be used to commit said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

FORFEITURE ALLEGATION AS TO COUNT FOUR

30. As a result of committing the offense alleged in Count Four of this Indictment, NAREK MARUTYAN, ALBERT MARUTYAN, a/k/a "Abo," MIKAYEL YEGHOYAN, a/k/a "Misho," DAVIT YEGHOYAN, VAHE

HOVHANNISYAN, LUSINE GHAZARYAN, SARO MOURADIAN, a/k/a "Paul Mouradian," and ZAVEN YERKARYAN, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

### Substitute Assets Provisions

31.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of the

defendants up to the value of the forfeitable property described
above.

   (Title 18, United States Code, Sections  981, 982, 1028, 1029
and 1963;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
AUDREY STRAUSS
Acting United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

NAREK MARUTYAN,
ALBERT MARUTYAN, a/k/a "Abo,"
MIKAYEL YEGHOYAN, a/k/a "Misho,"
DAVIT YEGHOYAN,
VAHE HOVHANNISYAN,
LUSINE GHAZARYAN,
SARO MOURADIAN, a/k/a "Paul Mouradian,"
and ZAVEN YERKARYAN,

Defendants.

INDICTMENT

20  Cr. ____  (    )

(18 U.S.C. §§ 1962, 1028(f), 1029(b)(2),
1349, and 1028A.)

AUDREY STRAUSS
Acting United States Attorney.

A TRUE BILL

_____
                    Foreperson.

12/03/20
(CA)

SEALED INDICTMENT FILED
w/ ARREST WARRANTS

KN PARKER
USMJ