**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

- against -

NAREK MARUTYAN, ALBERT MARUTYAN,
MIKAYEL YEGHOYAN, VAHE HOVHANNISYAN,
LUSINE GHAZARYAN, SARO MOURADIAN,
ZAVEN YERKARYAN

Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/9/2022

**20 Cr. 0652 (VM)**

**DECISION AND ORDER**

---

**VICTOR MARRERO, United States District Judge.**

On December 3, 2020, defendants Narek Marutyan ("N. Marutyan"), Albert Marutyan ("A. Marutyan"), Mikayel Yeghoyan ("Yeghoyan"), Vahe Hovhannisyan ("Hovhannisyan"), Lusine Ghazaryan ("Ghazaryan"), Saro Mouradian ("Mouradian"), and Zaven Yerkaryan ("Yerkaryan") (collectively, "Defendants") were charged in a six-count indictment ("Indictment") for racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count One), conspiracy to commit fraud relating to means of identification in violation of 18 U.S.C. § 1028(f) (Count Two), conspiracy to commit access device fraud in violation of 18 U.S.C. § 1029(b)(2) (Count Three), conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1349 (Count Four), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and (2) (Counts

1

Five and Six).[1]  Now before the Court are two pending motions: (1) the motion to dismiss the Indictment on the ground that the grand jury did not reflect a fair cross section of the community, in violation of the Sixth Amendment to the United States. Constitution ("Sixth Amendment"), and the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, *et seq.* ("JSSA"), (see "Motion to Dismiss," Dkt. No. 85)[2]; and (2) Mouradian's motion, pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure ("Rule 14(a)"), to sever his trial from that of the other Defendants, (see "Motion to Sever," Dkt. No. 167). In support of the Motion to Dismiss, the Defendants attach an expert declaration from Jeffrey O'Neal Martin. (See "Martin Decl." Dkt. No. 85-1 at 16.) On May 16, 2022, the Government filed a letter opposing the Motion to Sever. (See "Opposition" or "Opp'n," Dkt. No. 172.) During the status conference on May 20, 2022, the Government noted that courts in this District have denied motions to dismiss

---

[1]  The Indictment also charged Davit Yeghoyan ("D. Yeghoyan"), who pled guilty to Count One of the Indictment on November 2, 2021. (See Dkt. No. 130.)

[2]  Hovhannisyan filed the Motion to Dismiss and the other Defendants, except Yerkaryan, joined in the application. (See Dkt. Nos. 86, 87, 89, 92, 93, 94.) The Motion to Dismiss references the Fifth Amendment, in addition to the Sixth Amendment and the JSSA. (See Motion to Dismiss at 1.) However, the Motion to Dismiss makes no argument with respect to the Fifth Amendment, nor does the Fifth Amendment appear in the caption. (See generally Motion to Dismiss.) Therefore, the Court assumes that the reference to the Fifth Amendment in the Motion was in error, and the Court will not address the Fifth Amendment in this Order.

based on fair-cross-section challenges similar to the Defendants', and it opposes the motion to dismiss on those similar grounds. For the reasons set forth below, the Motion to Dismiss and the Motion to Sever are **DENIED**.

## I.   BACKGROUND[3]

A. ALLEGATIONS IN THE INDICTMENT

The Indictment alleges that the Defendants participated in a criminal enterprise called Pure Armenian Blood ("P.A.B."), which operated two main fraud schemes that underlie the offenses charged in the Indictment. First, P.A.B. members employed a credit card fraud scheme by using credit card skimmers to obtain card information, which was then used to make unauthorized purchases or cash withdrawals. Second, P.A.B. members employed a "bust out" scheme by using identifying information to open lines of credit, including credit cards, then incurred significant charges before ceasing payments on the accounts, and then disputed any resulting credit report alerts.

Mouradian owned and operated two Florida-based businesses — Griffin Car Wash and MYZCapital[4] — that the

---

[3]   For the facts stated herein, the Court relied on the Indictment, Motion to Dismiss, Motion to Sever, and the Opposition. Except where specifically quoted, no further citation to these sources will be made.

[4]   Griffin Car Wash is a car washing business, while MYZCapital is a computer software services company that designs management software for car washes and other businesses.

Government contends were used in P.A.B.'s schemes to extract value from fraudulently obtained credit cards. For example, the charges at Griffin Car Wash and MYZCapital were often in amounts disproportionate to the typical transaction for those businesses. The Government notes that records indicate that one victim's card was charged at Griffin Car Wash in amounts ranging from roughly $150 to $380, on seven occasions over a three-week period in 2019. However, most of the car washes offered by Griffin Car Wash cost less than $20.

As part of its investigation, and pursuant to judicially authorized search warrants, the Government obtained email communications between Mouradian and co-conspirators discussing P.A.B.'s scheme. This evidence includes, according to the Government, multiple messages from M. Yeghoyan and D. Yeghoyan to Mouradian containing personal information and banking information for P.A.B. victims that had suffered significant charges at Griffin Car Wash and MYZCapital.

B. THE SDNY JURY PLAN

The jury-selection procedures in this District are governed by the 2009 Amended Plan for the Random Selection of Grand and Petit Jurors in the United States District Court for the Southern District of New York (the "SDNY Jury Plan").[5]

---

[5]  The SDNY Jury Plan is available at: https://nysd.uscourts.gov/sites/default/files/pdf/juryplan_feb_2009.pdf (last visited June 7, 2022).

The SDNY Jury Plan contemplates the creation of the Master Jury Wheels and the Qualified Jury Wheels. <u>See</u> SDNY Jury Plan art. III.A, IV.A. Consistent with their naming, the Master Jury Wheels include "master" lists of prospective jurors derived from voter-registration logs, while the Qualified Jury Wheels include "all persons who have been found qualified to serve as jurors." <u>Id.</u> art. IV.A. Under the SDNY Jury Plan, the Master Jury Wheels "shall be emptied and refilled by not later than September 1 following the date of each Presidential Election." <u>Id.</u> art. III.B.

From among the Master Jury Wheels, qualified jurors are identified using "jury qualification questionnaires" sent to prospective jurors[6] once or twice a year, "or more frequently, if necessary." <u>Id.</u> art. III.D. Once returned, the questionnaires are "reviewed by the Clerk and finally evaluated by a district judge as necessary" to determine eligibility and inclusion in the Qualified Jury Wheels.[7] <u>Id.</u> Once a month, jurors from the Qualified Jury Wheels are

---

[6]  "The number of names to be drawn shall be determined by the Clerk based upon anticipated juror demands for the ensuing six months." SDNY Jury Plan, art. III.D.

[7]  Certain members of the Master Jury Wheels are excused or deferred upon request based on "undue hardship or extreme inconvenience," including, for example, those who are responsible for the daily care of children under the age of twelve, or persons over seventy years old. <u>Id.</u> art. VI. Likewise, members of certain other groups are exempt, such as active members of the Armed Forces or public officers of the government "actively engaged in the performance of official duties." <u>Id.</u> art. V.

summoned based on anticipated requirements for the coming month and then randomly assigned to grand or petit juries as needed. Id. art. III.F, IV.C.

Two courthouses comprise this District: Manhattan and White Plains. Master Jury Wheels and the Qualified Jury Wheels are created separately for each respective courthouse. The Manhattan courthouse draws from residents of New York, Bronx, Westchester, Putnam, and Rockland counties; and the White Plains courthouse draws from residents of Westchester, Putnam, Rockland, Orange, Sullivan, and Dutchess counties.[8] See id. art. III.C, IV.B. The proportion of jurors drawn from each county for the master wheels is the same as the proportion of registered voters in that county. See id. art. III.A, III.B.

Like Defendants, many criminal defendants throughout the district have brought similar motions to dismiss indictments on the grounds that the SDNY Jury Plan violates their right to juries comprising a fair cross section of the community. Courts have routinely dismissed these motions. See, e.g., United States v. Lucas, No. 20 CR 382, 2021 WL4925715

---

[8]   Given that both the Manhattan and White Plains courthouses draw from Westchester, Putnam, and Rockland counties, the SDNY Jury Plan provides that jurors selected for service from those counties "shall be then divided between the Manhattan and White Plains Qualified Wheels" in such a way that "reflect[s] the relative number of registered voters in each county within the respective Master Jury Wheels." SDNY Jury Plan, art. IV.B.

(S.D.N.Y. Oct. 21, 2021); <u>United States v. Adelekan</u>, No. 19 CR 291, 2021 WL 4839065, at *7 (S.D.N.Y. Oct. 15, 2021); <u>United States v. Middlebrooks</u>, No. 21 CR 89, 2021 WL 2402162 (S.D.N.Y. June 10, 2021); <u>United States v. Segovia- Landa</u>, No. 20 CR 287, 2021 WL 1966117 (S.D.N.Y. May 17, 2021); <u>United States v. Tagliaferro</u>, No. 19 CR 472, 2021 WL 1172502 (S.D.N.Y. Mar. 29, 2021). This Court has also denied motions to dismiss raising similar claims. <u>See United States v. Suquilanda</u>, No. 21 CR 263, 2021 WL 3500868 (S.D.N.Y. Aug. 9, 2021); <u>United States v. Charles</u>, No. 20 CR 419, 2021 WL 2457139 (S.D.N.Y. June 16, 2021).

## II.   <u>LEGAL STANDARD</u>

### A. <u>THE SIXTH AMENDMENT</u>

The Sixth Amendment guarantees criminal defendants the right to a jury panel "drawn from a source representing a 'fair cross section' of the community in which the defendant is tried." <u>United States v. Jackman</u>, 46 F.3d 1240, 1244 (2d Cir. 1995) (quoting <u>Taylor v. Louisiana</u>, 419 U.S. 522, 536 (1975)). To establish a prima facie violation of the Sixth Amendment's fair-cross-section guarantee, a defendant must satisfy a three-prong test:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the

community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979).

B. THE JSSA

The JSSA establishes that all criminal defendants "shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The JSSA "goes beyond prohibition of 'intentional' distortions and provides that in certain cases affirmative measures must be undertaken to insure that 'juries [are] selected at random from a fair cross section of the community.'" United States v. Fernandez, 480 F.2d 726, 733 (2d Cir. 1973) (citations omitted); see also 28 U.S.C. § 1863(a) ("Each United States district court shall devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed to achieve the objectives."). Additionally, the Duren factors apply to "fair cross section challenges under both the [JSSA] and the Sixth Amendment." United States v. LaChance, 788 F.2d 856, 864 (2d Cir. 1986).

C. RULE 14(a)

Under Rule 14(a), a court may sever a defendant's trial from any codefendants "[i]f joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant."

Fed. R. Crim. P. 14(a). To ultimately prevail on a Rule 14(a) motion, "the defendant must show not simply some prejudice but *substantial* prejudice." United States v. Sampson, 385 F.3d 183, 190 (2d Cir. 2004) (quoting United States v. Werner, 620 F.2d 922, 928 (2d Cir. 1980)). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). Even where there is a high risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." See id.

## III.  DISCUSSION

A. MOTION TO DISMISS

### 1. The Sixth Amendment

The Defendants satisfy the first Duren factor, given that Blacks and Latinos are unquestionably "distinctive" in the community. See United States v. Rioux, 97 F.3d 648, 654 (2d Cir. 1996) ("Rioux has satisfied the first prong of the Duren test: Blacks and Hispanics are unquestionably 'distinctive' groups for the purposes of a fair-cross-section analysis."). To establish the third prong of Duren — systematic exclusion — a defendant must show that "the

underrepresentation is due to the system of jury selection itself, rather than external forces." Id. at 658. In other words, "systematic exclusion does not occur simply because a facially neutral disqualification criterion disproportionately impacts a particular group." United States v. Barlow, 732 F. Supp. 2d 1, 40 (E.D.N.Y. 2010), aff'd, 479 F. App'x 372 (2d Cir. 2012). Thus, when the cause of exclusion "is an external force, not an inherent flaw within the Jury Plan," any underrepresentation is not "systematic." Tagliaferro, 2021 WL 1172502, at *4.

The Court finds that the Defendants have not established the third Duren factor. The Defendants initially suggest that they made a prima facie showing of systematic exclusion simply by presenting statistics regarding the alleged underrepresentation of Blacks and Latinos on the Manhattan wheels. (See Motion to Dismiss at 8-12.) But statistics alone are insufficient to carry the Defendants' burden to make a prima facie showing. See Anderson v. Casscles, 531 F.2d 682, 685 (2d Cir. 1976) ("[T]he law is clear that evidence of mathematical disparity, without more, is insufficient to make out a prima facie case of improper jury selection."); see also Rioux, 97 F.3d at 658; Lucas, 2021 WL 4925715 (finding that the defendant failed to establish the third Duren factor by only presenting evidence of a mathematical disparity);

<u>Adelekan</u>, 2021 WL 4839065, at *7 ("The Court of Appeals and other courts within the district have made amply clear that a statistical disparity alone is not sufficient to make out a fair cross section claim."). Therefore, the Court finds that the Defendants have not made a prima facie case that any alleged underrepresentation is systematic. For the above reasons, the Defendants' motion to dismiss the Indictment, for violation of the Sixth Amendment's fair-cross-section guarantee, is denied.[9]

2. <u>The JSSA</u>

Fair-cross-section challenges brought under the JSSA are also analyzed using the three-prong test in <u>Duren</u>. <u>See</u> <u>LaChance</u>, 788 F.2d at 864. Since the Defendant's fair-cross-section challenge fails under the Sixth Amendment, the Defendants' JSSA challenge also fails. <u>See</u> <u>id.</u> ("[B]ecause the <u>Duren</u> test governs fair cross section challenges under both the [JSSA] and the Sixth Amendment, our discussion of the statutory challenge also disposes of his constitutional claim.").

---

[9]   Since the Defendants fail to establish the third <u>Duren</u> factor, the Court does not address the Defendants' arguments regarding the second <u>Duren</u> factor (underrepresentation). <u>See</u>, <u>e.g.</u>, <u>Middlebrooks</u>, 2021 WL 2402162, at *3 (finding that where the defendant failed to satisfy the third element, "[t]he Court does not need to evaluate the second <u>Duren</u> factor of underrepresentation")

Apart from the cross-section challenge, the Defendants argue that the SDNY Jury Plan violates the JSSA by (1) excluding inactive voters, and (2) excluding individuals who provided alternate mailing addresses when registering to vote in Putnam County. (See Motion to Dismiss at 14-17.) At best, these allegations are nonactionable "technical violations." LaChance, 788 F.2d at 870 ("Mere 'technical' violations of the procedures prescribed by the [JSSA] do not constitute 'substantial failure to comply' with its provisions." (citations omitted)); see also Allen, 2021 WL 431458, at *10-11 (explaining that "even if the exclusion of inactive voters is a violation of the JSSA, it is certainly a technical violation," "[t]he clerical issue involving improperly transcribing alternate addresses of individuals to the master wheel is a technical violation of the JSSA," and "the improper prorating of voters across counties is also a technical violation of the JSSA"). Moreover, as the district court in Rioux explained, "[a] substantial violation of the [JSSA] occurs only when the alleged violation frustrates the Act's principles of random selection." Rioux, 930 F. Supp. 1558, 1580-81 (D. Conn. 1995), aff'd, 97 F.3d 648. The Defendants have not established that any of the alleged technical violations of the JSSA rise to this level. E.g., Schulte,

2021 WL 1146094, at *9-10 (rejecting a JSSA challenge on
similar grounds).

For the above reasons, the Defendants' motion to dismiss
the Indictment, for violation of JSSA, is denied.

B. MOTION TO SEVER

In the federal system, there is a preference for
conducting joint trials of defendants who were indicted
together. See Zafiro, 506 U.S. at 537. This preference "is
particularly strong where . . . the defendants are alleged to
have participated in a common plan or scheme." United States
v. Fazio, 770 F.3d 160, 166 (2d Cir. 2014) (quoting United
States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998)).

In deciding whether severance is warranted pursuant to
Rule 14(a), a Court should consider the following factors:

> (1) the number of defendants and the number of
> counts; (2) the complexity of the indictment; (3)
> the estimated length of the trial; (4) disparities
> in the degrees of involvement by defendants in the
> overall scheme; (5) possible conflict between
> various defense theories; and (6) prejudice
> resulting from evidence admissible as to some
> defendants, but not others.

United States v. Ramos, 346 F. Supp. 2d 567, 570 (S.D.N.Y.
2004). "While none of these factors is dispositive, each is
intended to provide guidance as to whether a jury will be
capable of considering the evidence as to each defendant

separately, independent of evidence against co-defendants."
Id.

Mouradian raises two main grounds for severance under Rule 14(a). First, the possibility of spillover prejudice because of the "tons" of evidence applicable to the P.A.B. enterprise, as opposed to the "mere crumbs" applicable to him as a "downstream" member of the fraud schemes. (Motion to Sever at 2.) Mouradian also vaguely references the potential for spillover prejudice due to the Defendants' common Armenian heritage. (See id.) Second, a joint trial would likely be delayed for "another year at the earliest," and "would take multiple weeks," as opposed to a trial for Mouradian that "might take two days." (Id. at 3.) Both grounds do not constitute the requisite substantial prejudice under Rule 14(a).

It is well settled that "disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance." United States v. Cardascia, 951 F.2d 474, 483 (2d Cir. 1991); United States v. Corsey, 512 F. App'x 6, 7 (2d Cir. 2013) (finding that "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials" (quoting United States v. Chang An-Lo, 851 F.2d 547, 557 (2d

14

Cir. 1988)). Even if there was a high risk of prejudice, "less drastic measures — such as limiting instructions — often suffice as an alternative to granting a Rule 14 severance motion." United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003); United States v. Peña, 932 F. Supp. 2d 464, 466–67 (S.D.N.Y. 2013) (denying severance of murder counts on grounds that any risk of spillover prejudice could be addressed by carefully crafting limiting instructions for jurors); United States v. Ramos, No. 12 CR 556, 2013 WL 1932110, at *4 (S.D.N.Y. May 8, 2013) (denying severance of defendants on grounds that even if the defendant might be subject to some spillover prejudice at a joint trial, any such prejudice could be remedied through an appropriate limiting instruction to the jury). Therefore, any disparity between the evidence against the P.A.B. enterprise and the evidence against Mouradian does not warrant severance, and any potential prejudice could be addressed by a limiting instruction. For the above reasons, any risk of spillover prejudice, or guilt by association, as to Mouradian does not warrant severing his trial from the other Defendants.

As for a potential delay of the trial, "[f]or reasons of economy, convenience and avoidance of delay, there is a preference in the federal system for providing defendants who are indicted together with joint trials." Feyrer, 333 F.3d at

114. The Government asserts that many of the witnesses and much of the evidence that will be marshalled at Mouradian's trial will be used for all the Defendants. (<u>See</u> Opp'n at 3.) For this reason, the Government adds that it does not expect that a separate trial for Mouradian would be substantially shorter than a joint trial. (<u>See</u> <u>id.</u>) Additionally, at the status conference on May 20, 2022, the parties informed the Court that they anticipate having a multi-week trial in Spring 2023. In the interest of judicial economy and convenience, and because the parties anticipate going to trial in approximately a year, any purported delay in commencing Mouradian's also does not favor severing his trial from the other Defendants. <u>See</u> <u>Feyrer</u>, 333 F.3d at 114.

## IV.   <u>ORDER</u>

For the reasons set forth above, it is hereby

**ORDERED** the motion to dismiss the indictment from defendants Narek Marutyan, Albert Marutyan, Vahe Hovhannisyan, Lusine Ghazaryan, Saro Mouradian ("Mouradian"), and Zaven Yerkaryan (Dkt. Nos. 85, 86, 87 89, 92, 93, 94) is **DENIED**; and it is further

**ORDERED** that motion from Mouradian to sever his trial pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure (Dkt. No. 167) is **DENIED.**

**SO ORDERED.**

Dated:     June 9, 2022
           New York, New York

_____
Victor Marrero
U.S.D.J.